**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **VENTURE EXPRESS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cv-00657** |
| | ) | **Judge Aleta A. Trauger** |
| **VANGUARD NATIONAL TRAILER CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM</u>**

Before the court are: (1) the Motion for Partial Summary Judgment (Doc. No. 32) filed by defendant Vanguard National Trailer Corporation ("Vanguard"); and (2) the Motion to Set Aside Order Granting Motion to Strike (Doc. No. 45) filed by plaintiff Venture Express, Inc. ("Venture"). For the reasons set forth herein, the court will deny the Motion to Set Aside Order and grant the Motion for Partial Summary Judgment.

**I.      SUMMARY JUDGMENT STANDARD OF REVIEW**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018); Fed. R. Civ. P. 56(c)(1)(A). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. "[S]ummary judgment will not lie if the dispute is about a material fact that is

'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

## II.    FACTS AND PROCEDURAL HISTORY

### A.    Procedural History

Plaintiff Venture Express, Inc. ("Venture") initiated this lawsuit in June 2019 by filing a Complaint in the Circuit Court for Rutherford County, Tennessee, asserting claims against Vanguard under state law for breach of implied and express warranties and seeking damages in the amount of $6,500,000 in connection with its purchase of almost 800 "Vanguard VXP and VXP Composite Plate dry van trailers . . . for use in its normal business operations." (Doc. No. 1-1, Compl. ¶ 8.) Vanguard promptly removed the case to federal court on the basis of diversity jurisdiction and filed a Motion for Judgment on the Pleadings, which the court granted in part, dismissing the claim for breach of implied warranty.

Following a period of discovery and with leave of court, Vanguard has now filed its Motion for Partial Summary Judgment, supporting Memorandum of Law, Statement of Undisputed Material Facts, and the transcript of the Deposition of Daniel Coppess, Venture's director of maintenance and its Rule 30(b)(6) representative. (Doc. Nos. 32, 33, 34, and 32-1.) In this motion, the defendant seeks partial dismissal of the claims asserted against it and dismissal of Venture's claim for consequential damages, specifically damages attributable to "loss of use" of the Trailers. Venture filed a Response, its own Memorandum of Law, a Response to the defendant's Statement of Undisputed Material Facts, and the Declarations of Daniel Coppess and Jon McFarlin, Venture's equipment manager. (Doc. Nos. 37, 38, 39, and 37-1 and -2.)

On January 7, 2022, in addition to its Reply (Doc. No. 41), Vanguard filed a Motion to Strike the Declarations of Coppess and McFarlin (Doc. No. 42). The court granted the Motion to Strike as unopposed on January 27, 2022. (Doc. No. 44.) On February 7, 2022, Venture filed a Motion to Set Aside the Order granting the Motion to Strike, in which it also requests an additional seven days to respond to the Motion to Strike. (Doc. No. 45.) Vanguard has now filed a Response, vigorously opposing the plaintiff's Motion to Set Aside Order. (Doc. No. 46.)

**B.    The Warranties[1]**

Venture is a transportation company that hauls freight to and from suppliers across thirteen states. At any given time, Venture has approximately 3,300 trailers in use. Vanguard is a manufacturer and seller of "dry van trailers," including the Vanguard VXP and Vanguard VXP Composite Plate trailers. (Compl. ¶¶ 7, 8; Answer ¶¶ 7, 8.) From 2008 to 2017, Venture purchased "approximately 795 Vanguard VXP and VXP Composite Plate dry van trailers," which "were manufactured by [Vanguard] and sold through resellers." (Compl. ¶ 8; Answer ¶ 8.) Between 2008 and 2012, Venture purchased 427 trailers (collectively, the "Trailers") from Vanguard; these are the only trailers at issue in this case.

Venture alleges in the Complaint that, following its purchase of the Trailers from Vanguard, some of them began exhibiting signs of premature deterioration. "Specifically, rivets on the bottom rail of the panels of the Trailers began rusting, causing the side panels to bow, open, and collapse." (Compl. ¶ 11.) In addition, "the rivet holes in the panels enlarged causing the rivets to fall through." (*Id.*) Venture allegedly notified Vanguard that the Trailers "contained defects that caused the panels to delaminate, lose their structure and exhibit significantly shorter life spans"

---

[1] Unless otherwise indicated, the facts stated herein are drawn directly from the plaintiff's Response to the defendant's Statement of Undisputed Material Facts (Doc. No. 39) and are undisputed for purposes of the Motion for Partial Summary Judgment.

than expected. (*Id.*) Vanguard repaired a small number of the Trailers. Venture's claims arise from Vanguard's alleged refusal to "repair all remaining Trailers or otherwise perform its warranty obligations." (*Id.* ¶ 12.)

It is undisputed that all of the Trailers were covered by Vanguard's express five-year limited warranty ("five-year warranty"). The five-year warranty states in part that "each new Vanguard National Trailer . . . will be free from defects in materials and workmanship for a period of five years, if properly maintained and used in normal service." (Doc. No. 5-1.) The five-year warranty further provides that Vanguard's "sole obligation under this limited warranty is to repair or replace, at its option, any part or component of the Product that was furnished and installed by [Vanguard] and that proves defective in material and/or workmanship during the first sixty (60) months following the date of delivery to the Purchaser." (*Id.*) In a parallel provision, the five-year warranty states that the purchaser's "sole remedy for any defect in the product, or any component or part thereof, is limited to the repair or replacement of the defective item at the Manufacturer's sole option." (*Id.*) Further, the five-year warranty expressly disclaims any liability on the part of Vanguard for "cargo loss, loss of use, lost profits, loss of good will, storage, towing or other transportation costs, or any other incidental or consequential damages, whether sustained by purchaser or purchaser's customers, arising out of any alleged defect, or breach or failure of warranty." (*Id.*) Finally, "[a]s a pre-condition to [Vanguard's] obligation under this limited warranty, Purchaser must notify Manufacturer of any product defect promptly upon discovery." (*Id.*)

In addition to the five-year warranty, Vanguard provided a ten-year limited warranty ("ten-year warranty") (collectively with the five-year warranty, the "warranties") with respect to the "composite side panels" on all new Vanguard VXP Composite Plate Trailers. The ten-year

warranty specifically states that it is "subject to the standard limitations of Vanguard's existing trailer warranty," referring to the limitations in the five-year warranty. (Doc. No. 5-2.) The ten-year warranty states that Vanguard "warrants the composite side panels will be free from any defects in material or workmanship for a period of ten years." (*Id.*) More specifically, Vanguard "warrants the material with full parts and labor coverage for the first seven years from the date of manufacture" and "warrants the material with a parts only warranty from the conclusion of year seven through year ten from the date of manufacture." (*Id.*)

### C.    Venture's Spreadsheet

Venture prepared and produced in discovery a spreadsheet containing details related to the Trailers. (Doc. No. 32-1, at 156–83 ("Spreadsheet").) Venture's corporate representative, Daniel Coppess, was asked about the Spreadsheet during his Rule 30(b)(6) deposition, taken on October 29, 2021. The Spreadsheet includes, among other things, Venture's internal "Trailer Number" for all of the Trailers (Column D), the "Trailer Purchase Date" (Column N), the "Date Repair Needed" (Column O), and the repair "Start" date for those trailers that actually underwent repair (Column J).

Under Column G ("Warranty"), the Spreadsheet notation for each trailer says "No Warranty," "Parts Only," or "Projected." Daniel Coppess explained that "No Warranty" means that Vanguard denied a request for warranty coverage; "Parts Only" means that Vanguard provided parts coverage but did not pay for labor. For every trailer listed from Row 48 through Row 430,[2] the word "Projected" is shown in Column G. Daniel Coppess initially testified that "Projected" means "the repairs have not been completed on [the] unit yet," but he later clarified that it means

---

[2] The first three rows of the Spreadsheet contain the column headings. The list of Trailers begins at Row 4 and ends at Row 430, for a total of 427.

not merely that the repair work is projected, but that "[t]he damage itself is projected." (Doc. No. 32-1, Coppess Dep. 24.)

Column H ("RO") refers to the repair order number. If the entry under this column says "TBD," that means that the need for a repair is "anticipated," but the repairs have "not been completed on that unit." (Coppess Dep. 26.) Column O ("Date Repair Needed") refers to the date on which Venture internally cited a specific trailer as needing repair. Column J of Venture's spreadsheet (repair "Start" date) refers to the date on which a trailer "was parked down to have the repair completed." (Coppess Dep. 28.) Typically, the date on which a claim for warranty coverage for an identified trailer was submitted would fall between the "Date Repair Needed," that is, the date on which an actual need for a repair was identified, and the "Start" date stated on the Spreadsheet, meaning the repair "Start" date. (*Id.* at 32–33.) The earliest date on which a claim for warranty coverage would be submitted is on the same day as the "Date Repair Needed." (*See id.*) According to Coppess, Venture would notify the dealer from which Venture had purchased the trailer, or another authorized Vanguard repair facility, and the dealer would notify Vanguard of the need for warranty coverage for a repair. (*Id.* at 32–33.)

For 383 of the 427 Trailers for which Venture seeks damages (Rows 48 through 430 on Venture's spreadsheet), Column O of Venture's spreadsheet states "TBD." Columns J and K, and (the repair "Start" and "End" dates) also say "TBD." Daniel Coppess repeatedly conceded that, for those trailers where "TBD" is noted in Columns O, J, and K, and for which where it says "Projected" in Column G, the trailers have not yet shown evidence of damage, no warranty claim has been made, and, consequently, Vanguard has not actually denied any warranty claim:

> Q. So . . . starting at Line 48 there's nothing in that because there's been no warranty presented to Vanguard by Venture for the trailers represented on lines 48 through 430, correct?
>
> A. Correct.

> Q. And ergo there has been no denial by Vanguard in regard to any of those potential warranty claims?
>
> A. That's correct.

(Coppess Dep. 36.)

> Q. . . . So starting in Line 48 there's nothing in the column for amount Vanguard liable. Again, those are the trailers for which no damage is yet evidence itself [sic], and no warranty claim has been made to Vanguard, correct?
>
> A. Correct.

(*Id.* at 52.) Further, Venture admits, for purposes of the Motion for Partial Summary Judgment, that there is no current evidence of damage for the 383 trailers listed in Rows 48 through 430 on Venture's spreadsheet, and none of those trailers has undergone any repairs with respect to which it claims Vanguard should have provided warranty coverage. (Doc. No. 39, Pl.'s Resp. to Statement of Undisp. Fact ¶¶ 31, 32.)[3] Rather, the damage to those 383 trailers is "projected." (*Id.* ¶ 33.) As Coppess explained, Venture "believe[s] that the repair will be anticipated." (Coppess Dep. 26.) In addition, of the 383 trailers listed in Rows 48 through 430, 113 of them were purchased more than ten years ago, which means those 113 trailers are now more than ten years old and outside any warranty coverage period.[4]

---

[3] Venture admits the truth of the statement that "[t]here is no current evidence of damage for the 383 Trailers listed in Rows 48 through 430" on the Spreadsheet, but this admission is "subject to the qualifications" in ¶ 10 of Coppess's Declaration. (Doc. No. 39 ¶ 31.) The referenced paragraph of Coppess's Declaration, as discussed below, directly contradicts his deposition testimony insofar as it states that "[o]bservable damage may exist" on some of the 430 trailers that Venture has yet to discover. ((Doc. No. 37-1, Coppess Decl. ¶ 10.) Coppess's Declaration, however, has been stricken, and the court will not take this vague and conflicting statement into consideration in ruling on the Motion for Partial Summary Judgment.

[4] As stated above, Column N of the spreadsheet reflects the dates on which the Trailers were purchased. At the time Venture purchased the Trailers, they had obviously already been manufactured. Therefore, the manufacture date for each trailer precedes the "Trailer Purchase Date" identified under Column N of the Spreadsheet.

In addition, based on the referenced rows of the data included on the Spreadsheet and Coppess's explanation of what the entries in each column mean, Vanguard makes specific assertions that, for the thirty-four trailers identified in Rows 4, 5, 7–16, 18, 20–22, 25–31, 33–35, 39–44, 46, and 47, the purchase dates (and, therefore, the manufacture dates) precede the dates identified in Column O ("Date Repair Needed") by more than ten years.[5]

Finally, based on the referenced rows of the data included on the Spreadsheet and Coppess's explanation of what the entries in each column mean, Vanguard makes specific assertions that, for the trailers identified in Rows 17, 23, 24, 32, 36, 37, 38, and 45, the purchase dates precede the dates identified in Column O ("Date Repair Needed") by more than seven years, but less than ten years. There is no dispute that Vanguard provided composite side panel parts for the trailers identified in Rows 23, 24, 32, 36, 37, and 38, all of which were between seven and ten years old at the time Venture submitted a warranty claim, but declined to provide labor, based on the terms of the ten-year warranty.

### D.    The Venture Declarations

With its Response in opposition to the Motion for Partial Summary Judgment, Venture submitted the Declarations of Daniel Coppess and Jon McFarlin. (Doc. Nos. 37-1 and -2.) The court thereafter granted the defendant's Motion to Strike the Declarations as unopposed and, as discussed below, will deny the plaintiff's Motion to Set Aside the Order granting the Motion to Strike. To facilitate the discussion of the plaintiff's arguments in opposition to the Motion for

---

[5] For each trailer identified in Rows 40 through 47 on the Spreadsheet, the "Date Repair Needed" identified in Column O of the original Spreadsheet—the one provided to the court—is "TBD." (Doc. No. 32-1, at 156.) Coppess testified that the Spreadsheet was originally completed in the spring of 2020 and updated in September 2021 and that a claim for warranty coverage was submitted for each of the trailers listed in Rows 40 through 47 sometime between the spring of 2020 and September 2021. (Coppess Dep. 66–67, 86–87.)

Partial Summary Judgment, the court will nonetheless briefly summarize the salient parts of Coppess's Declaration.

This Declaration is offered in support of the plaintiff's assertion that there is a material factual dispute as to (1) whether all of the Trailers suffer from a manufacturing defect that was present at the time they were purchased by Venture, and (2) whether Venture put Vanguard on notice of that defect as to *all* of the Trailers no later than the summer of 2018, at a meeting between high level representatives from both parties. More specifically, according to Coppess, the Trailers have a "unique defect" that is the underlying issue in this case, one that he has never witnessed on trailers manufactured by any other company.[6] (Doc. No. 37-1, Coppess Decl. ¶ 6.) In Coppess's experience, trailers such as those purchased from Vanguard "should be road worthy for a minimum of 20 years, but 25–30 years is a fair expectation that is consistent with industry standards." (*Id.* ¶ 7.) He asserts that, other than a "defect originating with the manufacturer," the Trailers would not be experiencing the damage that gave rise to this lawsuit, as such damage is not caused by ordinary wear and tear. (*Id.*) "Trailer side panels do not typically present with maintenance issues within ten years from the manufacture date, aside from damage occurring while in use on the road, such as from an accident," and it is not generally foreseeable that a trailer would "fall[] apart within ten years." (*Id.*) According to Coppess, the problem is caused by the corrosion or rusting of side panel rivets, leading to "buckling and loss of structure in the panel." (*Id.*) He also claims that "Vanguard acknowledges the existence of the defect in guidance it provided to Venture in 2018." (*Id.* (citing Exs. C & D to McFarlin Decl.).)

---

[6] All of the Trailers listed on the Spreadsheet were purchased in 2008, 2010, or 2012. Although Venture refers to the trailers purchased in 2008 as "2009 model year trailers," it is apparent from the Spreadsheet that these trailers were manufactured in 2008. Likewise, Venture appears to refer to trailers manufactured and purchased in 2012 as "2013 model year" trailers.

Venture's position is that, because all of the Trailers suffer from the same manufacturing defect, they will eventually "show observable damage" even if they have not done so yet. (*Id.* ¶ 10.) Venture also maintains that it is "manifestly unreasonable" to expect that it would discover damage on any given trailer within the five- or seven-year warranty periods, because the "defect does not ordinarily give rise to [discoverable] damage . . . within that time." (*Id.* ¶ 11.) Coppess asserts that Venture placed Vanguard on reasonable notice of the "defect" within a reasonable time after discovery thereof "as contemplated by the warranty documents." (*Id.* ¶ 26.)

## III. DISCUSSION

### A. The Motion to Set Aside Order Granting Motion to Strike

In its Motion to Strike, filed on January 7, 2022, Vanguard argued that the Declarations of Daniel Coppess and Jon McFarlin are subject to exclusion because (1) they directly contradict Venture's previous Rule 30(b)(6) deposition testimony; (2) they include previously undisclosed evidence that is being submitted after the close of discovery and without good cause and is therefore subject to exclusion under Rule 37(c)(1); and (3) they consist of previously undisclosed and inadmissible expert opinion testimony. (Doc. No. 42.)

Under the court's Local Rules, Venture's response to this motion was due within fourteen days, or no later than January 21, 2022. *See* L.R. 7.02(a)(3). The court waited twenty days before granting the motion as unopposed on January 27, 2022. (Doc. No. 44.) Rather than immediately seeking relief from that Order, Venture waited another eleven days before seeking to set it aside. And, although it had by then had an entire month in which to prepare a response to the Motion to Strike, it requested an additional seven days "*after* the Court rules on this motion to set aside*"* to file a response to the Motion to Strike. (Doc. No. 45, at 1 (emphasis added).) The excuses it offers for not filing a timely response to the Motion to Strike are counsel's excusable neglect in incorrectly calendaring the due date for the response, unique circumstances arising from the

administration of counsel's law practice, and counsel's not having advance warning from opposing counsel of the Motion to Strike.

To be clear, Venture actually seeks relief on two fronts: it seeks both to set aside the court's Order granting the Motion to Strike *and* it seeks to extend the time for responding to the Motion to Strike well after the deadline for the response had already expired. With regard to the first, a party may seek relief from an order based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Similarly, under Rule 6(b)(1)(B), when some act must be done "within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." That is, where, as here, a party seeks to extend a deadline after it has already passed, Rule 6(b)(1)(B) requires a showing of both "good cause" and "excusable neglect" for failing to act before the deadline passed. Fed. R. Civ. P. 6(b)(1)(B).

The "primary measure" of good cause "is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). The determination of excusable neglect requires the balancing of five factors:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). The Supreme Court has recognized that "'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept.'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (citation omitted). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) . . . is not limited

strictly to omissions caused by circumstances beyond the control of the movant." *Id.* "The determination of excusable neglect is an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266–67 (6th Cir. 2009).

As for good cause, the plaintiff has not shown diligence in responding to the Motion to Strike or in seeking to set aside the Order granting it. And, weighing the factors relevant to a finding of excusable neglect, the court finds no basis either for extending the deadline for Venture to respond to the Motion to Strike or for setting aside the Order granting the Motion to Strike. First, with respect to the danger of prejudice to Vanguard, the court observes that the trial of this matter is scheduled to begin just over two months from now, and Venture's delay in regard to this ancillary matter jeopardizes both the trial setting and the ability of the parties to prepare for trial, assuming the trial is not postponed. And counsel's calendaring error and difficulties in administering his practice do not excuse the length of the delay or justify the request for yet more time to respond to the Motion to Strike.

Moreover, having examined the Motion to Strike as well as Venture's suggestion as to what its response thereto would entail, as summarized in its present Motion to Set Aside Order, the court finds, based on the current record, that the Motion to Strike would be granted in all important respects even if the court were to reconsider it on the merits. More specifically, it is well established that a "party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006) (quoting *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997)). During his Rule 30(b)(6) deposition, Coppess repeatedly affirmed that the 383 trailers for which the Spreadsheet noted "TBD" in the

"Date Repair Needed" and "projected" under the "Warranty provided" column had not yet shown any actual damage from any purported defect. (*See, e.g.*, Coppess Dep. 24 ("The damage itself is projected."); *id.* at 26, 52.) However, he now states in his Declaration that the trailers for which damage is "projected" are, or may be, actually exhibiting damage. (Coppess Decl. ¶¶ 10, 19.) Specifically, he states that "[o]bservable damage may exist on trailers that are identified as 'projected,' although Venture has yet to discover it" and that some of the "trailers that include the designation of 'projected' have many of the same indications present in the more severely affected trailers." (*Id.* ¶¶ 10, 19.)

It is true that a party "who was not directly questioned about an issue" should not be prevented "from supplementing incomplete deposition testimony with a sworn affidavit." *Aerel, S.R.L.*, 448 F.3d at 907. In that situation, the affidavit merely "fills a gap left open by the moving party and thus provides the district court with more information, rather than less, at the crucial summary judgment stage." *Id.* The plaintiff suggests in the Motion to Set Aside that Coppess's Declaration testimony was simply "filling a gap" in his deposition testimony, but the record speaks for itself. Coppess's Declaration directly contradicts his deposition testimony on a material matter on which he was closely questioned. This new testimony is not a "legitimate effort[] to supplement the summary judgment record" and is, instead, an "attempt[] to create a sham issue of material fact" on an issue regarding which the witness was directly questioned during his deposition. *Id.*

Coppess also states in his Declaration, in express contradiction to his deposition testimony, that an additional nine trailers were submitted for warranty coverage, even though the Spreadsheet does not identify them as having been submitted for warranty coverage. Coppess acknowledges that this testimony is in direct contradiction to his deposition testimony. He claims to have been made aware some time after his deposition that the Spreadsheet was incorrect. Vanguard argues

that Coppess's statements in his Declaration constitute new evidence submitted well after the close of discovery, without good cause, and that this new evidence is subject to exclusion under Rule 37(c)(1). Vanguard also points out that the emails attached to Venture's Response that relate to these nine trailers date from September 2019 through February 2020, meaning that Venture was in possession of this information for more than a year prior to the close of discovery. (Doc. No. 42, at 2–3.)

Rule 26(e) of the Federal Rules of Civil Procedure requires that any party who has responded to discovery must supplement its discovery response "in a timely manner" upon learning that the response is materially incorrect or incomplete. Fed. R. Civ. P. 26(e)(1)(A). Under Rule 37(c)(1), a party who fails to comply with Rule 26(e) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." The Sixth Circuit has repeatedly confirmed that the exclusion of undisclosed evidence is "automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756 (7th Cir. 2004)); *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (reiterating that exclusion is mandatory unless the "omitted or late disclosure is 'substantially justified' or 'harmless'").

The Sixth Circuit has identified five factors that are relevant to the determination of whether a nondisclosure was substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 748 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)).

In this case, it is clear that the information now included in Coppess's Declaration was not previously disclosed to Vanguard in compliance with 26(e). Vanguard served an interrogatory on Venture asking it to "[l]ist each individual Trailer that [Venture] contend[s] has, or has had, damage for which Vanguard is responsible in some way." (Doc. No. 42-1, at 7.) Vanguard asked Venture to identify each trailer by VIN number and to provide, in addition to other information, the date on which it informed Vanguard of the need for repair, the date on which Vanguard denied the claim, and details regarding the specific repair it believed was needed. (*Id.*) Venture responded by referencing its Rule 26 initial disclosures and "Exhibit A," which the court presumes to have been the original version of the Spreadsheet. Even though Coppess testified during his deposition that the Spreadsheet was correct (except with respect to those trailers listed in Rows 40 through 47, as noted above), he apparently learned after his deposition that this was incorrect. However, Venture never supplied Vanguard with this purportedly new information until it responded to the Motion for Partial Summary Judgment.

As for whether this information should be excluded based on Venture's failure to supplement its discovery answer, it is clear that this news comes as a surprise to Vanguard in light of the discovery answer and Coppess's deposition testimony to the contrary, even though Vanguard theoretically could have gone back through the emails from the repair vendor, attached to McFarlin's Declaration, and cross-referenced the trailer numbers referenced therein with the trailer numbers on the Spreadsheet to confirm whether Coppess was correct in asserting that none of the other 383 trailers had ever been submitted for warranty coverage. Vanguard, however, was entitled to rely on the discovery answer and Coppess's testimony.

Second, allowing the introduction of the evidence now would inevitably disrupt the trial, as it would require reopening discovery, which has now been closed for more than six months

(after numerous extensions of the deadlines), in order to allow Vanguard to obtain additional information regarding those nine trailers. It would likely also entail reopening the dispositive motion deadline. Reopening these deadlines would require again resetting the trial date, now scheduled to begin April 19, 2022. The evidence is important to Venture's claims, and Coppess's Declaration and Venture's current Motion to Set Aside Order offer no explanation for the failure to disclose this evidence previously, other than that no repair was ever performed on these trailers and, as a result, they were never "entered into Venture's repair log." (Coppess Decl. ¶ 18.) This explanation does not justify Coppess's not having done the necessary research prior to producing the Spreadsheet or prior to testifying as Venture's Rule 30(b)(6) witness, nor does it explain why Venture did not supplement its discovery answer promptly upon Venture's learning this information. Because the new evidence contained in Coppess's Declaration was not produced in accordance with Venture's obligations under Rule 26(e), and the omission has not been shown to be either substantially justified or harmless, exclusion of this testimony would be required.

Finally, Vanguard objects to opinion testimony offered by both Coppess and McFarlin, neither of whom has been disclosed as an expert. While either witness would be able to testify about what they have actually observed during the course of their employment without being disclosed as an expert, Venture has not offered any basis for finding them competent to testify as to the existence of a latent manufacturing defect in the Trailers. Moreover, as discussed below, even if the court accepts as true Venture's theory that all of the Trailers suffer from a latent manufacturing defect that will eventually manifest in damage to the Trailers, the existence of a latent manufacturing defect would not allow Venture to extend the duration of Vanguard's warranties.

In sum, the court finds no good cause or excusable neglect to justify setting aside the Order granting the Motion to Strike and further finds that reinstating the Motion to Strike in order to allow the plaintiff to respond to it would likely be futile and would cause additional unwarranted delay in the resolution of this case. For all of these reasons, the court will deny the Motion to Set Aside the Order granting the Motion to Strike.

### B.     The Motion for Partial Summary Judgment

In its Motion for Partial Summary Judgment, Vanguard seeks dismissal of the breach of warranty claim as it relates to 423 of the 427 Trailers. It asserts that: (1) the breach of warranty claim related to 383 of the Trailers fails because the damage to those trailers is speculative, Venture has not submitted a claim for warranty coverage related to those trailers, and Vanguard has not denied a claim for warranty coverage of damage to those trailers; (2) the warranty coverage claims related to another 34 of the 427 Trailers were submitted when the trailers were more than ten years old and, therefore, after the ten-year warranty period had expired; and (3) Vanguard fulfilled its warranty obligations for an additional six of the 427 trailers. Vanguard also asserts that Venture's claims for damages related to loss of use and other consequential damages are clearly barred by the express warranties that cover the Trailers. (*See* Doc. No. 33, at 1.)

In response, Venture maintains that (1) there is a material factual dispute as to whether *all* of the Trailers suffer from a manufacturing defect that was present on the date of purchase, even if it has not yet manifested in damage to all—or even most—of the Trailers; (2) Venture provided notice of that manufacturing defect for all of the Trailers no later than the summer of 2018, within the ten-year warranty period; (3) in any event, the warranty documents require only that Venture provide notice of a defect "promptly upon discovery"; the warranty does not require that notice be provided "within the trailer's warranty period" (Doc. No. 38, at 10); (4) the warranty failed of its essential purpose and, therefore, Venture is not limited to the repair and replace remedy provided

by the warranty; and (5) there is a material factual dispute as to whether Vanguard complied with its warranty obligations with respect to the trailers for which it supplied parts but not the labor (or the cost of labor) to perform the necessary repairs.

Venture's arguments depend upon a central theory, which is that *all* of the Trailers suffer from a manufacturing defect that was present from the date of manufacture, even though the defect has not manifested as damage in all of the Trailers, and that Venture is entitled to damages sufficient to cover the cost of repairing all of the Trailers, including those for which the defect manifested after the expiration of the warranty period and those that will need to be repaired in the future, along with damages associated with the loss of use of any trailers while they are being repaired. Because its defense to all of Vanguard's arguments depends upon that central premise, which itself essentially depends on Venture's argument that the warranties are unenforceable, the court considers first Venture's defenses aimed at setting aside or altering the terms of the warranties.

### 1. The Warranties Did Not Fail In Their Essential Purpose

Relying heavily upon *McCullough v. General Motors Corp.*, 577 F. Supp. 41 (W.D. Tenn. 1982), Venture argues that the warranties covering the Trailers fail of their essential purpose, "because it can be difficult to observe damage in some of the trailers with the defect within ten years," and because, "[g]iven the nature of the defect, it is manifestly unreasonable to expect that Venture would discover damage on any given trailer within the five- or seven-year warranty periods." (Doc. No. 38, at 14 (citing Coppess Dec. ¶ 11).) It insists that the warranty periods are not enforceable, because "[t]he defect does not ordinarily give rise to damage, and thus is not discoverable in any particular trailer, within that time." (*Id.*)

The Uniform Commercial Code ("UCC") as adopted by Tennessee authorizes a seller to contractually limit a buyer's available remedies. Tenn. Code Ann. § 47-2-719(1). However, if

"circumstances" cause a limited remedy in a contract to "fail of its essential purpose," then the buyer may "take advantage of other remedies available under the UCC." *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 156–57 (Tenn. 2021) (citing Tenn. Code. Ann. § 47-2-719(2) & cmt. 1). In *Milan*, the Tennessee Supreme Court explained that the statute's reference to a warranty's "failure of essential purpose" "is concerned with the essential purpose of the remedy chosen by the parties, not with the essential purpose of the code or of contract law, or of justice and/or equity." *Id.* at 157 (citing *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15, 29 (Tenn. Ct. App. 1993)). That is, § 47-2-719(2) "is concerned only with novel circumstances not contemplated by the parties and does not contemplate agreements arguably oppressive at their inception." *Id.* The court cited as the most common example of a circumstance in which a repair and replacement remedy fails of its essential purpose as when "the seller is unwilling or unable to repair the defective goods within a reasonable period of time." *Id.* (quoting *Baptist Mem'l Hosp. v. Argo Constr. Corp.*, 308 S.W.3d 337, 346 (Tenn. Ct. App. 2009)).[7]

In *Baptist Memorial*, the cross-plaintiff argued that the warranty at issue in that case—a one-year limited warranty that provided a remedy of repair, replacement, or refund of the purchase price—failed in its essential purpose because the "defect" in the product it purchased "was latent and could not have been discovered within the one-year period." *Baptist Mem'l Hosp.*, 308 S.W.3d

---

[7] In *Milan*, the plaintiff argued that the two-year repair and replacement warranty covering the engine components of the defendants' trucks failed of its essential purpose, because "multiple trucks required multiple repairs; repair rates exceeded [the defendant's] projections; and [engine component] failure could not be permanently repaired and was a recurrent problem." *Milan Supply*, 627 S.W.3d at 156. The Tennessee Supreme Court disagreed, finding that "the Warranties required [the defendant] to make repairs as needed but did not impose on [it] an obligation to ensure that the trucks would never again need repairs." *Id.* at 157. In addition, it was undisputed that the requested repairs submitted during the warranty period in that case were actually performed, and the trucks "were put back in service." *Id.* The case has little relevance here, however, because the defects were not alleged to be latent, and the repairs were requested, and performed, during the warranty period.

at 346. The cross-plaintiff argued that the case "present[ed] novel circumstances that were not reasonably contemplated by [the parties] at the time of contracting" and that, because the limited remedy effectively left it with no remedy at all, the warranty failed of its essential purpose. *Id.* at 347. There, as here, the cross-plaintiff cited *McCullough* (in which a federal district court was interpreting Tennessee law), as well as cases from other jurisdictions, as holding that "a limited remedy can be found to fail of its essential purpose if the goods contain a latent defect that cannot be discovered upon reasonable inspection" within the warranty period. *Id.*

The Tennessee Court of Appeals distinguished the facts before it from those in *McCullough*, which involved wrongful death and a breach of warranty claim by an individual consumer,[8] rather than a dispute "between two business entities, fully capable of bargaining over

---

[8] *McCullough* was a wrongful death action filed after the plaintiff's wife was killed and his minor child was injured in a vehicular accident that was allegedly caused by a defective steering column. The plaintiff sued the car manufacturer alleging, among other things, breach of warranty. The manufacturer sought summary judgment on the basis that the duration of the warranty was for "12 months or 12,000 miles, whichever comes first," and that the accident occurred more than twelve months after the purchase date. *McCullough*, 577 F. Supp. at 44. The plaintiff argued that, although time limitations on warranties are generally given effect, in his case, the limitation was "manifestly unreasonable," insofar as it applied to the vehicle's collapsible steering column, because the steering column had a latent defect that could not be discovered by an ordinary consumer until a catastrophic accident occurred. *Id.* The district court focused on whether the time limitation was "manifestly unreasonable," citing cases from other jurisdictions holding that time limitations of various durations were "manifestly unreasonable" if the latent defect could not reasonably be discovered before the expiration of the limitation. *Id.* at 45–46 (collecting cases). It also relied on a decision by the New York Court of Appeals, holding that a latent defect would cause a limited remedy to fail of its essential purpose if the defect could not reasonably be discovered before the expiration of the time period, because it would leave the buyer without a remedy. *Id.* at 46 (citing *Wilson Trading Corp. v. David Ferguson, Ltd.*, 244 N.E.2d 685, 688 (N.Y. 1968)). The court ultimately denied the manufacturer's motion for summary judgment, based on its conclusion that there was a genuine issue of material fact concerning whether the limited warranty, as applied to the collapsible steering column, was "manifestly unreasonable" under Tenn. Code Ann. § 47-1-204 (now codified at Tenn. Code Ann. § 47-1-302(b)) or "fail[ed] in its purpose or operate[d] to deprive either party of the substantial value of the bargain" as stated in the comments to Tenn. Code Ann. § 47-2-719. *McCullough*, 577 F. Supp. at 47. No appeal was ever taken in the case.

items such as the breadth and time period of the warranties on the product sold." *Id.* at 350. The court also noted that the cases on which *McCullough* relied, in particular *Wilson Trading Corp. v. David Ferguson, Ltd.*, 244 N.E.2d 685, 688 (N.Y. 1968), which set aside as unreasonable a ten-day warranty period relating to a sale of yarn, had since been roundly criticized by commentators:

> It was not circumstances that left the buyer remediless but rather his own agreement to assume the risk for defects that could not be discovered within ten days. The stipulated remedy may have been unreasonable or unconscionable (and unenforceable for that reason) but it did not fail to achieve its essential purpose—to indemnify the buyer against latent defects that could have been discovered within ten days.

*Baptist Mem'l Hosp.*, 308 S.W.3d at 348 (quoting James J. White & Robert S. Summers, *Uniform Commercial Code* § 12–10 (2d ed.)). The Tennessee Court of Appeals recognized that, "[t]hereafter, a split of authority developed, with numerous jurisdictions holding that a latent defect does not cause an exclusive contractual remedy to fail of its essential purpose." *Id.* That was the line of cases that the Tennessee Court of Appeals opted to follow—specifically, those holding that § 2-719(2) of the UCC "is inapplicable once the warranty has expired." *Id.* (quoting *Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.*, 767 F. Supp. 363, 374 (D. Mass. 1991) (other citations omitted)). The court approvingly quoted *Boston Helicopter* as explaining that a latent defect's manifesting after the expiration of a warranty period does not mean that the limited warranty has failed of its essential purpose:

> To the contrary, the warranty provisions here operated just as intended, allocating the risk of loss between the parties both before and after the warranty expired. . . . A purchaser cannot claim that a warranty provision has failed of its essential purpose merely because a potential claim does not arise until after the warranty period has expired. Put another way, to apply 2-719(2) to an expired warranty is to confuse limitation of remedy with limitation of liability.

*Id.* at 350 (quoting *Boston Helicopter*, 767 F. Supp. at 374) (quotation marks and internal citations omitted).

Here, as in *Baptist Memorial* and *Boston Helicopter*, the fact that an alleged latent defect

in the Trailers frequently does not cause actual damage to a trailer until after the expiration of the warranty period does not mean that Vanguard's warranty has "fail[ed] of its essential purpose." Tenn. Code Ann. § 47-2-719(2). Rather, under these circumstances, Venture, a sophisticated business entity, assumed the risk that the Trailers would develop problems after the expiration of the warranty period and that any such problems would not be covered by a warranty. Venture's expectation that the Trailers should be roadworthy for a minimum of twenty years does nothing to change that reality.

The court, therefore, rejects Venture's effort to set aside the warranties, or extend the warranty periods, based on its argument that the latent defects in the Trailers' composite side panels causes Vanguard's warranties to fail of their essential purpose.

### 2. The Limitation of Remedies Is Not Unconscionable

In addition to the cost of parts and labor to repair the allegedly defective Trailers, Venture seeks consequential damages, including damages for the "loss of use" of the allegedly defective Trailers. (Compl. ¶ 16.) Vanguard asserts that, even if it may otherwise be liable for breach of warranty (which it disputes), Venture is not entitled to loss of use damages, as such damages are expressly precluded by the clear language of the five-year warranty, which Venture admits is incorporated into the ten-year warranty.

Venture's Response does not directly address this argument other than by referencing Tenn. Code Ann. § 47-2-719(3), which states: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." Venture also refers to *McCullough*'s discussion of Comment 1, which states, in relevant part, that "any clause purporting to modify or limit the remedial provisions of this Article in an unconscionable manner is subject to deletion and in that event the remedies made available by this Article are applicable as if the stricken clause had never existed." *McCullough*, 577 F. Supp. at 45 (quoting Tenn. Code Ann. § 47-2-719 cmt.

1).

As discussed above, the warranties at issue here do not fail of their essential purpose simply because the Trailers did not begin experiencing the need for repair until after the expiration of the warranty periods. Moreover, the five-year warranty is crystal clear that the "PURCHASER'S SOLE REMEDY FOR ANY DEFECT IN THE PRODUCT, OR ANY COMPONENT OR PART THEREOF, IS LIMITED TO THE REPAIR OR REPLACEMENT OF THE DEFECTIVE ITEM." (Doc. No. 5-1 (capitalization in original).) The warranty also expressly states that the manufacturer, Vanguard, "SHALL HAVE NO LIABILITY FOR . . . LOSS OF USE" or any other type of consequential damages arising from the alleged defect, or from the "breach or failure" of any warranty. (*Id.* (capitalization in original).)

In *Shepherd v. Weather Shield Manufacturing*, No. W1999-00508-COA-R3CV, 2000 WL 34411064 (Tenn. Ct. App. Aug. 21, 2000), the plaintiff argued that the "contractual exclusion of consequential damages" was unconscionable under the circumstances presented by that case. *Id.* at *4. The Tennessee Court of Appeals expressly recognized a distinction between § 47-2-719(2), which provides for setting aside a warranty that "fail]s] of its essential purpose," and § 47-2-719(3), which is "waived only if the exclusion was itself unconscionable." *Id.* at *5 (citing A*quascene, Inc. v. Noritsu Am. Corp.*, 831 F. Supp. 602, 605 (M.D. Tenn. 1993)). That is, "the exclusion of consequential damages must be shown to be unconscionable in and of itself." *Id.* at *6.

In *Aquascene*, the district court explained that, under Tennessee law, a contract term is unconscionable only

> when the inequality of the bargain is so manifest as to shock the judgment of a
> person of common sense, and where the terms are so repressive that no reasonable
> person would make them on the one hand, and no honest and fair person would
> accept them on the other.

*Aquascene*, 831 F. Supp. at 605 (quoting *Haun v. King*, 690 S.W.2d 869, 872 (Tenn. Ct. App. 1984)). The court rejected the plaintiff's unconscionability argument and granted summary judgment to the defendant on the issue of whether the consequential damages exclusion was enforceable, finding that the plaintiff had not rebutted the defendant's proof that the "bargaining between [the parties] was fair and relatively equal, that the two parties were sophisticated and intelligent, and that the damages exclusion clause was not unreasonable." *Id.* Likewise, in *Shepherd*, the court found that, even if the plaintiff were able to show that the limited warranty, providing only a replacement remedy, failed of its essential purpose, that would not automatically "waive the consequential damages exclusion" and that "[t]he facts of this case [did] not indicate that the contractual term is unconscionable as a matter of law pursuant to the definition set forth in *Haun v. King*." *Shepherd*, 2000 WL 34411064, at *6.

Under Tennessee law, the party seeking to set aside a contract or a contract provision as unconscionable bears the burden of proof, as with "any other defense of contract law." *Mitchell v. Kindred Healthcare Operating, Inc.*, 349 S.W.3d 492, 499 (Tenn. Ct. App. 2008). Venture, in this case, presents neither argument nor evidence in support of its claim that the warranty provision barring the recovery of loss of use damages is unenforceable as unconscionable. Vanguard is entitled to summary judgment on the plaintiff's claim for loss of use or other consequential damages that are expressly excluded by Vanguard's warranty.

Insofar as Venture may also be attempting to argue that the time limitations in the warranties are unconscionable, such an (implicit) argument fails for the same reason. Venture has presented no evidence of the type of inequality at the time of contracting that would support a claim of unconscionability, nor has it pointed to caselaw from any jurisdiction suggesting that warranty durations of from five to ten years are inherently unreasonable, much less

unconscionable.[9]

>    3.    *The Warranty Claim Related to the 383 Trailers That Have Not Exhibited Defects*

In support of its Motion for Partial Summary Judgment, Vanguard argues, first, that it is entitled to summary judgment as to Venture's breach of warranty claim related to the 383 trailers that have not experienced any actual defect in their composite side panels, for which Venture has never submitted warranty claims, and with respect to which Vanguard, as a result, has never denied any warranty claim. Vanguard also points out that 113 of those 383 trailers are now more than ten years old, as a result of which the ten-year warranty period has expired, thus providing a further basis for summary judgment as to claims relating to those particular trailers.

Venture, in response, asserts that there is a genuine issue of material fact as to the existence of a manufacturing defect in all of the Trailers that "was present from the manufacturing date," even though the defect has not yet manifested itself in the form of damage to all of the Trailers. More specifically, as referenced above, its theory is that an unusually high percentage of the Trailers it purchased from Vanguard, particularly those purchased in 2008 (the "2009 model year"), have exhibited a problem with the side panels that "points to the existence of a manufacturing defect." (Doc. No. 38, at 8.) As of the date of its Response to the Motion for Partial

---

[9] Notably, in those cases Venture cites as finding time limits in warranties to be manifestly unreasonable, including *McCullough*, *Wilson Trading*, and the opinions cited in those cases, the warranty periods were no longer than one year in length, such as in *McCullough*, and, in many cases, had a duration of days or months. *See, e.g.*, *Cmty. Television Servs. v. Dresser Indus.*, 586 F.2d 637, 641–42 (8th Cir. 1978) (in which the district court held that the six-month warranty period was a "'manifestly unreasonable' time for discovery and notification of breach [of warranty] . . . in light of the tower's twenty-five year average useful life," but the appellate court affirmed on other grounds); *Neville Chem. Co. v. Union Carbide Corp.*, 422 F. 2d 1205, 1217 (3rd Cir. 1970) (finding "fifteen day notice requirement" to be "manifestly unreasonable if it is construed to require that notice be given of latent defects which would not be discoverable until after the time specified has elapsed"); *Wilson Trading Corp.*, 244 N.E.2d at 688 (finding ten-day notice period to be unreasonable).

Summary Judgment (December 31, 2021), "Venture has noted observable damage, meaning signs of delamination, on the side panels of fifty-three (53) Vanguard trailers," which represents approximately 12.5% of the 427 Trailers. (*Id.* (citing Coppess Decl. ¶ 9).) Citing the Spreadsheet, Venture argues that the defect has been observed across "all model year trailers, including 2009, 2010, 2011, 2012, and 2013." (*Id.*) "Therefore," Venture concludes, "the existence of a manufacturing defect during the warranty period is a genuine issue of material fact on which Vanguard has not shown entitlement to judgment as a matter of law." (*Id.* at 9.)

However, Venture has offered no admissible expert proof of the existence of a "latent defect" in the Trailers. Moreover, even if it had such proof, the fact that a product has a latent defect that does not actually result in damage to the product within the warranty period does not mean that a purchaser can avoid the application of the warranty's time limit, as already discussed. Venture nonetheless insists that it put Vanguard on notice of the problem with *all* of the Trailers no later than the meeting that took place during the summer of 2018 and that, by doing so, it complied with the warranty requirement of notifying Vanguard "of any product defect ***promptly upon discovery***." (*Id.* at 9–10 (quoting five-year warranty) (emphasis added by Venture).) Venture argues that the language of the warranty does not require that it provide notice to Vanguard of a defect within the warranty period and that, even if it does, it provided timely notice within the warranty period for all of the Trailers. Venture relies on a case from this district, *Hill v. Winnebago Indus., Inc.*, No. 3:17-cv-00678, 2018 WL 5721947 (M.D. Tenn. Nov. 1, 2018) (Campbell, J.), for the proposition that it provided proper notice in this case through Jon McFarlin's April 5, 2018 email to Vanguard, giving notice that Venture had bought 135 2009 model year trailers that would all need to be retrofitted. (Doc. No. 37-2, at 30.)

Venture's reliance on *Hill* is misplaced. In that case, Judge Campbell simply held that there was a question of fact as to whether the plaintiffs who had purchased a Winnebago RV had given proper notice to the manufacturer of the defects to the RV under the terms of the warranty. Here, Vanguard is not arguing that Venture did not provide proper notice because of the person to whom notice was sent. Rather, Vanguard argues that Venture cannot give notice of a defect that has not yet manifested as a need for a repair. (*See* Doc. No. 41, at 3 ("Vanguard does not argue that Venture's alleged notice . . . was insufficient because of who[] was notified—Vanguard takes issue with the undisputed fact that Venture did not notify Vanguard of the specific Trailers with purported defects.").)

Venture's argument that it is entitled to warranty coverage for a latent defect that has not manifested in damage to the trailers within the warranty period is simply not supported by the law or the language of the warranties. The five-year warranty limits Vanguard's obligations to repair or replace any part or component "that proves defective . . . *during the first sixty (60) months following the date of delivery to the Purchaser.*" (Doc. No. 5-1.) If a part has not exhibited a defect during that warranty period, Vanguard incurs no obligation. The ten-year warranty, which expressly incorporates the terms of the five-year warranty, simply extends Vanguard's obligation to provide "full parts and labor coverage" of any defect in the composite side panels that manifests during "the first seven years from the date of manufacture" and to provide parts for any defect that manifests "from the conclusion of year seven through year ten from the date of manufacture." (Doc. No. 5-2.) The Tennessee Supreme Court has recognized that the "premise of a repair and replace warranty is that repairs may well be needed." *Milan*, 627 S.W.3d at 157. Further, "[a] warranty to repair or replace does not guarantee proper performance. Rather, it anticipates potential defects and specifies the buyer's remedy *during the stated period*." *Id.* (quoting *Neb. Popcorn,*

*Inc. v. Wing*, 602 N.W.2d 18, 24 (Neb. 1999)) (emphasis added).

Specifically regarding the 383 trailers for which the "Date Repair Needed" is noted on Venture's Spreadsheet to be "TBD," Coppess repeatedly testified during his Rule 30(b)(6) deposition that Venture has not observed any damage to these trailers and has not presented a claim for warranty coverage of damage to these trailers and that Vanguard has not denied warranty coverage for these trailers. (*See* Coppess Dep. 24 ("The damage itself is projected."); *id.* at 36 ("Q. So . . . again, starting at Line 48 there's nothing in [Columns P and Q for "Denial by" and "Denial Date"] because there's been no warranty [claim] presented to Vanguard by Venture for the trailers represented on lines 48 through 430, correct? A. Correct."); *id.* at 90 (confirming that none of the trailers in Lines 48 through 430 had been flagged by maintenance as needing repair or "been parked down by the maintenance department in order to be repaired"); *see also* Spreadsheet, Column O, Rows 48–430.) Because Venture has not submitted any proof of actual damage to the specific trailers in Rows 48–430, that it made a specific request for warranty coverage as to those trailers, or that Vanguard denied warranty coverage for those trailers, Venture's breach of warranty claim as it relates to those trailers fails, and Vanguard is entitled to summary judgment on this point.

4.     *The 34 Trailers that Were Out of Warranty When the Claim for Coverage Was Submitted*

Vanguard argues that, for 34 of the trailers on the Spreadsheet, Venture submitted claims for warranty coverage more than ten years after the purchase date, which indisputably occurred *after* the manufacture date, as a result of which the claims fell outside the warranty coverage period. Vanguard summarized the relevant information drawn from the Spreadsheet in a redacted chart, as follows:

| Excel Row Number | Trailer Number (Column D) | Trailer Purchase Date (Column N) | Date Repair Needed (Column O) |
|---|---|---|---|
| 4 | 539082 | 7/16/2008 | 9/7/2019 |
| 5 | 539084 | 7/16/2008 | 11/27/2019 |
| 7 | 539047 | 6/5/2008 | 11/21/2019 |
| 8 | 539037 | 6/5/2008 | 4/26/2019 |
| 9 | 539112 | 9/16/2008 | 8/22/2019 |
| 10 | 539125 | 9/30/2008 | 12/17/2019 |
| 11 | 539086 | 7/16/2008 | 9/12/2019 |
| 12 | 539005 | 5/21/2008 | 8/13/2019 |
| 13 | 539102 | 9/16/2008 | 6/12/2019 |
| 14 | 539126 | 9/30/2008 | 6/12/2019 |
| 15 | 539042 | 6/5/2008 | 8/14/2019 |
| 16 | 539087 | 7/16/2008 | 6/12/2019 |
| 18 | 539127 | 9/30/2008 | 12/17/2020 |
| 20 | 539055 | 6/12/2008 | 12/6/2018 |
| 21 | 539046 | 6/5/2008 | 10/17/2019 |
| 22 | 539081 | 7/16/2008 | 8/27/2019 |
| 25 | 539116 | 9/30/2008 | 10/29/2018 |
| 26 | 539123 | 9/30/2008 | 11/7/2018 |
| 27 | 539056 | 6/12/2008 | 2/4/2019 |
| 28 | 539089 | 7/16/2008 | 10/2/2018 |
| 29 | 539097 | 7/16/2008 | 10/8/2018 |
| 30 | 539106 | 9/16/2008 | 1/2/2019 |
| 31 | 539083 | 7/16/2008 | 12/11/2018 |
| 33 | 539032 | 6/5/2008 | 8/29/2018 |
| 34 | 539063 | 6/12/2008 | 11/1/2018 |
| 35 | 539128 | 9/30/2008 | 11/11/2019 |
| 39 | 539104 | 9/16/2008 | 11/12/2018 |
| 40 | 539023 | 5/21/2008 | TBD (2020 or later) |
| 41 | 539094 | 7/16/2008 | TBD (2020 or later) |
| 42 | 539096 | 7/16/2008 | TBD (2020 or later) |
| 43 | 539110 | 9/16/2008 | TBD (2020 or later) |
| 44 | 539103 | 9/16/2008 | TBD (2020 or later) |
| 46 | 539124 | 9/30/2008 | TBD (2020 or later) |
| 47 | 539093 | 7/16/2008 | TBD (2020 or later) |

(Doc. No. 33, at 5–6.)[10]

---

[10] Vanguard clarifies that the Trailers listed in Rows 40 through 47 of the Spreadsheet show "TBD" in Column O, for the "Date Repair Needed," but Coppess testified during his deposition

For each of these trailers as well, Venture argues that it put Vanguard on notice of the defect before the expiration of the ten-year warranty period. It reiterates that

> the 10-year limited warranty only requires Venture to notify Vanguard promptly upon discovery of any defect in the trailers. The warranty does not require that damage or notification of damage occur during the warranty period. Rather, notification of the defect alone is enough for Venture to fulfill its obligation under the 10-year limited warranty. After the meeting in Trenton, Georgia in the summer of 2018, Vanguard had notice that Venture was experiencing the same defect in all of its trailers . . . .

(Doc. No. 38, at 13.)

But Coppess's deposition testimony, in fact, establishes that Venture was *not* experiencing the same defect in all of its trailers and that the date on the Spreadsheet that *Venture created* reflects the date on which Venture became aware of damage to the trailers and gave notice of such to Vanguard. Because the dates reflected on the Spreadsheet establish that the thirty-four trailers identified on Vanguard's redacted chart were, in fact, free from "defects" as contemplated by the ten-year warranty for the duration of the warranty period, and Venture did not seek warranty coverage until after the expiration of the warranty period, Vanguard is entitled to summary judgment with respect to the breach of warranty claim arising from the denial of warranty coverage for the trailers identified in the chart above.

### 5.     The Ten Remaining Trailers

Vanguard argues that, of the ten remaining trailers, eight of them were more than seven years old at the time they developed a need for repairs, and there is no dispute that Vanguard actually provided composite side panel parts for six of those (the trailers listed in Rows 23, 24, 32, 36, 37, and 38 of the Spreadsheet). Vanguard argues that, because it was obligated to provide parts

---

that these Trailers were submitted for repairs sometime between the spring of 2020 and September 2021. (Coppess Dep. 86–87.)

but not labor under the terms of the ten-year warranty, it is entitled to summary judgment with respect to the warranty claim related to those six trailers:

| Excel Row Number | Trailer Number (Column D) | Trailer Purchase Date (Column N) | Date Repair Needed (Column O) |
|---|---|---|---|
| 23 | 531018 | 7/15/2010 | 7/22/2019 |
| 24 | 531028 | 7/15/2010 | 1/26/2018 |
| 32 | 531022 | 7/15/2010 | 11/21/2017 |
| 36 | 531016 | 7/15/2010 | 10/15/2019 |
| 37 | 531031 | 7/15/2010 | 4/26/2019 |
| 38 | 531015 | 7/15/2010 | 11/15/2019 |

(Doc. No. 33, at 7.)

Venture does not respond to this argument other than to argue generally, as discussed above, that the seven/ten-year warranty fails of its essential purpose, because it was unreasonable to expect Venture to discover the latent defect within the seven-year period during which both parts and labor would have been available as a remedy. (*See* Doc. No. 38, at 15 ("Because the defect existed from the date of manufacture, Venture should have been entitled to full parts and labor coverage for each of these trailers because the defect existed within the first seven years from the date of manufacture. . . . Vanguard should have also paid for labor.").)

The court has already disposed of that argument. Accordingly, Vanguard is entitled to summary judgment as to the trailers identified in Rows 23, 24, 32, 36, 37, and 38 of the Spreadsheet.

By Vanguard's assessment, the granting of the Motion for Partial Summary Judgment will leave a live dispute as to only four of the 427 Trailers. Although Vanguard has not identified those trailers regarding which its coverage obligation remains in dispute, its motion appears to address the status of the warranty claims for all of the Trailers *except* those identified in Rows 6, 17, 19, and 45 of Venture's Spreadsheet.

## IV.    CONCLUSION

For the reasons set forth herein, the court will deny the plaintiff's Motion to Set Aside the Order granting the Motion to Strike and grant the defendant's Motion for Partial Summary Judgment.

This case remains set for trial on April 19, 2022 to address the breach of warranty claim as to the four trailers as to which there apparently remain material factual disputes.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge